NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TANYA RAWLS, | Civil Action No. 2:16-cv-03898-SDW |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | April 25, 2017 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Tanya Rawls's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision must be **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On December 20, 2011, Plaintiff applied for SSI, (Tr. 215-20), alleging disability as of December 11, 2009, based on diabetes, asthma, back pain, obesity, and diabetic neuropathy. (Tr. 105-14.) Plaintiff's application was denied initially, (Tr. 117-21), and upon reconsideration. (Tr. 125-27.) Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). (Tr. 131-37.)

On November 20, 2013, a hearing was held before ALJ Marissa Ann Pizzuto ("ALJ Pizzuto"), who issued a decision finding Plaintiff to be disabled. (Tr. 105-14.) However, on September 26, 2014, the Appeals Council reversed ALJ Pizzuto's decision and ordered a new hearing. (Tr. 98-104.)

On remand, ALJ West held a February 13, 2015 hearing at which Plaintiff testified. (Tr. 27-51.) ALJ West then issued a decision finding Plaintiff not disabled and denying Plaintiff's application for disability benefits on May 28, 2015. (Tr. 11–21.) On May 3, 2016, the Appeals Council denied Plaintiff's request for review of that decision. (Tr. 1-4.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand this matter for an award of benefits or, in the alternative, for further administrative proceedings. (Pl. Br. at 9-10.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was 41 years old when she filed her claim for disability benefits on September 18, 2012. (Tr. 215.) She has a high school education and previously worked as a security guard and as a food preparation worker. (Tr. 248.) Her last significant employment was as a nurse assistant from 2007 to 2009. (Tr. 229, 248.)

### 2. Medical History

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to her disability claim. (Tr. 79-565.) In addition, Plaintiff testified about her health during the hearings before ALJ Pizzuto and ALJ West. (Tr. 42-49.) The following is a summary of the medical evidence:

In April 2012, Rambhai Patel, M.D. ("Dr. Patel"), performed a consultative examination at the request of the state agency. (Tr. 400-02.) Dr. Patel noted Plaintiff suffered from a history of diabetes, lower back pain, and asthma. (Tr. 400.) He also indicated that Plaintiff appeared to walk with a normal gait and no edema was noted. (Tr. 401.) A chest x-ray and imaging of Plaintiff's lumbar spine were normal. (Tr. 401, 406.) Imaging of her knees showed no fracture or dislocation except slight sclerosing changes suggesting possible arthritis. (Tr. 401, 407.)

State agency physician, Ibrahim Housri, M.D. ("Dr. Housri"), reviewed the record on May 21, 2012, and opined that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or carry ten pounds, stand, walk, and sit for about six hours in an eight-hour workday. (Tr. 84-85.) Gary Spitz, M.D. ("Dr. Spitz"), affirmed Dr. Housri's opinion on October 2, 2012. (Tr. 92-93.)

In late April of 2012, imaging was performed on Plaintiff's left knee and revealed findings of a degenerative tear and osteoarthritis. (Tr. 410-11.) The record also indicates that, in December 2012, Plaintiff appeared in the Saint Michael's Emergency Room complaining of lower back pain and right shoulder pain after falling in a supermarket. (Tr. 413.) However, examination of Plaintiff's back and shoulders was normal. (Tr. 414.) She had intact range of motion, motor strength, and sensation in her lower extremities, though she *was* diagnosed with a right shoulder contusion. (Tr. 415-16.)

Imaging from January 2013 showed lumbar disc bulges and a tear and edema in Plaintiff's right shoulder. (Tr. 431.) In May 2013, a right shoulder MRI revealed a supraspinatus tendon tear and a lumbar spine MRI showed degenerative changes and a L5-S1 herniation. (Tr. 423, 431-34.) I. Ahmad, M.D. ("Dr. Ahmad"), concluded that Plaintiff suffered "permanent residual effects" from a slip-and-fall and would have "difficulty in performing activities of everyday life." (Tr. 424.)

Tamara Khaimchayev, M.D. ("Dr. Khaimchayev"), examined Plaintiff in September 2013. (Tr. 439-43.) Dr. Khaimchayev indicated that Plaintiff could frequently lift ten pounds, sit for about four hours in an eight-hour workday, and stand or walk for less than two hours in an eight-hour workday. (Tr. 441.) She also determined that Plaintiff did not need a cane or other assistive device to walk. (*Id*.)

In February 2014, Plaintiff was seen at the University Hospital Clinic for complaints of lower back and bilateral knee pain. (Tr. 513-14.) Mubdiul Imtiaz, M.D. ("Dr. Imtiaz"), found mild crepitus in Plaintiff's knees. (Tr. 514.) In April 2014, Plaintiff was seen by Eric Altschuler, M.D. ("Dr. Altschuler"), at the University Physical Medicine and Rehabilitation Clinic, again complaining of lower back and bilateral knee pain. (Tr. 519.) While the record does not indicate that Plaintiff was prescribed a cane by a medical provider, Plaintiff claims that she had been walking with one since September 2013. (Tr. 519.) She also had some tenderness to touch in her right knee. (Tr. 521.)

Plaintiff was given a CPAP device for mild sleep apnea in May 2014. (Tr. 486-88.) In June 2014, Plaintiff returned to the University Hospital Clinic without using a cane. (Tr. 499-501.) Plaintiff then met with E. Gordon, M.D. ("Dr. Gordon"), from the clinic in July 2014, who

determined Plaintiff had knee crepitus. (Tr. 496.) Plaintiff did not use a cane at that visit either. (Tr. 496.)

In August 2014, Plaintiff appeared at the University Hospital for a follow-up for her diabetes. (Tr. 490-91.) Plaintiff showed decreased sensation in her fingers and toes; however, her musculoskeletal and neurological examinations were normal. (*Id.*)

In March 2015, Betty Vekhnis, M.D. ("Dr. Vekhnis"), performed a consultative examination at the request of the state agency. (Tr. 553-65.) Dr. Vekhnis found that Plaintiff was obese, had decreased flexion of her lumbar spine, and needed a cane for walking long distances. (Tr. 553-54, 559-64.) She opined that Plaintiff could sit for eight hours and stand and walk for three hours in an eight-hour workday. (Tr. 559-64.)

### 3. Mental Symptoms

Plaintiff visited the University Behavioral Health Care Clinic in September and October 2013 for anxiety. (Tr. 455.) Plaintiff stated that she was not taking prescribed insulin because of her fear of needles. (Tr. 456.) Dr. Stuart Belenker, M.D. ("Dr. Belenker"), noted Plaintiff's mood was sad and anxious and her affect was constricted. (Tr. 466-67.) He prescribed her Zoloft and therapy. (*Id.*)

By March 2014, Plaintiff reported making moderate progress with treatment and that her medication was helping. (Tr. 524, 527.) Dr. Belenker noted that Plaintiff was participating in monthly therapy since September 2013. (Tr. 447.) In June 2014, Plaintiff denied nervousness, anxiety, depression, and concentration problems to David Bleich, M.D. ("Dr. Bleich"), a primary care physician. (Tr. 500.) Dr. Bleich reported that Plaintiff's mental status examination findings were normal, which included normal mood, affect, and behavior. (Tr. 501.)

**4. Function Report**

Plaintiff submitted a function report in support of her application for SSI benefits. (Tr. 275-82.) Plaintiff stated in the report that she spends her days showering, eating, watching television, going to doctor's appointments, checking the mail, taking out the garbage, crocheting, and sitting/speaking with other people. (Tr. 275.) She reported that she takes care of her grandchildren on some weekends. (Tr. 275-76.) She also said she sleeps only three to four hours each night. (*Id.*) Plaintiff does socialize and plays cards, but she claims she is somewhat of a loner at times. (Tr. 279.) She said that she generally has difficulty kneeling, standing, walking, sitting, and climbing stairs due to leg pain from diabetes. (Tr. 282.) Plaintiff further stated she is not able to stand for long and she takes breaks and sits while doing chores. (Tr. 277.)

**5. Hearing Testimony**

At a November 20, 2013 hearing, Plaintiff testified that she went to her treating physician for knee pain, back pain, and instability. (Tr. 63-65.) She said she has difficulty walking one long "city" block and that she has to sit in the shower and needs help with her socks and shoes. (Tr. 60-61.) She also stated that she can write and sit for approximately thirty minutes, but cannot lift more than ten pounds. (Tr. 62, 64.)

At a February 13, 2015 hearing before ALJ West, Plaintiff testified about her medical problems and medication/treatment since the November 2013 hearing. (Tr. 42-49.) Plaintiff claimed that her condition had worsened. (Tr. 42.) She stated that she had diabetic neuropathy with loss of feelings in her hand and feet. (Tr. 38.) She testified that she is obese and that she had to use a CPAP machine at night to sleep. (Tr. 46, 49.) Vocational Expert Brian J. Daly appeared at the hearing before ALJ West but did not testify. (Tr. 41.)

## II.    LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination

9

of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy

that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  **DISCUSSION**

On May 28, 2015, after performing the five-step disability test, ALJ West found that Plaintiff was not disabled under the relevant portions of the Act. (Tr. 11-21.)  At step one of the disability analysis, ALJ West found that Plaintiff had not engaged in SGA since December 20, 2011, the application date. (Tr. 13); *see* 20 C.F.R. § 416.971 *et seq*.  He then proceeded to step two to determine what, if any, severe impairments Plaintiff suffered.  *See* 20 C.F.R. § 416.920(a)(4)(ii).

At step two, ALJ West properly considered the entire medical record in finding that Plaintiff suffered from the following severe impairments: "diabetes, mellitus with neuropathy, degenerative disc disease, osteoarthritis, asthma, obstructive sleep apnea, obesity, and anxiety." (Tr. 13); *see* 20 C.F.R. § 416.920(c).  These severe impairments were found to "significantly limit the claimant's mental and physical abilities to do one or more basic work activities."  (Tr. 19.) These findings are supported by substantial evidence in the record.  Furthermore, once ALJ West determined which of Plaintiff's impairments qualified as "severe," he considered, under step three, whether Plaintiff's severe impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 416.920(a)(4)(iii).

At step three, ALJ West properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  Specifically, it was found that the requirements of Listing 1.04A, disorders of the back, were not met because there was no evidence

of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (Tr. 13.) It was also determined that the elements of Listing 1.04B were not met because there was no evidence that Plaintiff's back disorder resulted in an inability to ambulate effectively. (Tr. 13.) In addition, ALJ West properly found that the evidence in the record does not support a finding that Plaintiff had reached the FEV1 levels required under 3.02A or the number of attacks described in 3.02B. (Tr. 13-14.) Moreover, when addressing Plaintiff's sleep apnea, as required under Listing 3.10, ALJ West found that the record is devoid of evidence that meets the mean pulmonary artery pressure or arterial hypoxemia required under 3.09, or the loss of specific cognitive abilities or affective changes required under 12.02. (*Id.*) The determination that Listing 9.0B5 was not met was also correct because Plaintiff "has not exhibited any symptoms, and there has been no medical diagnosis of impairments or complications regarding the [Plaintiff's] diabetes or mellitus or thyroid disorder." (Tr. 14.)

ALJ West also properly determined that the Paragraph B requirements were not satisfied because Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. (*Id.*); *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. In reaching this conclusion, the ALJ properly found that Plaintiff has mild restriction in activities of daily living and social functioning and moderate difficulties regarding concentration, persistence, or pace. (Tr. 14-15.) It was also properly found that Plaintiff has not experienced any episodes of decompensation lasting for an extended duration. (*Id.*)

ALJ West also found that the evidence failed to establish the presence of the Paragraph C criteria. (*Id.*) Therefore, he properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Accordingly, Plaintiff was not disabled under the step three analysis, leading the ALJ to step four to determine whether Plaintiff can perform any of her past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e).

Before undergoing the analysis in step four, however, ALJ West properly concluded that Plaintiff has the RFC "to perform sedentary work as defined in 20 CFR 416.967(b) except that [Plaintiff] must avoid extreme cold and workplace hazards such as extreme heat, moving mechanical parts of equipment, tools, or machinery, electrical shock, working in high, exposed places, exposure to radiation, working with explosives, and exposure to toxic, caustic chemicals." (Tr. 16); *see* 20 C.F.R. §§ 416.920(e), 416.945. In making this determination, the ALJ considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p. (Tr. 16.) He also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*) In support of his finding, ALJ West cited extensively to Plaintiff's testimony, the treatment and evaluative records of Dr. Patel, Dr. Ahmad, Dr. Vekhnis, and state agency medical consultants, as well as records from the University Hospital Clinic. (*See* Tr. 16-19.)

After determining Plaintiff's RFC, at step four ALJ West properly found that Plaintiff is unable to perform her past relevant work as a nurse assistant under 20 C.F.R. § 416.965. (Tr. 19.) Because he determined that Plaintiff cannot perform her past relevant work, the analysis proceeded to step five to determine whether there exists work in the national economy Plaintiff could perform. *See* C.F.R. §§ 416.920(a)(4)(v), 416.920(f), 416.920(g)(1).

At step five, ALJ West properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (Tr. 27); *see* 20 C.F.R. §§ 416.969, 416.969a. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that

Plaintiff was capable of performing unskilled sedentary work despite her restriction from extreme temperatures and work place hazards, as well as her restriction to simple work. (Tr. 20.) Thus, ALJ West's factual findings that Plaintiff is capable of performing work that exists in significant numbers in the national economy are supported by substantial credible evidence. Accordingly, ALJ West was correct in determining that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 20); *see* 416.920(g).

On appeal, Plaintiff now seeks reversal of the Commissioner's decision on three bases. First, Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. (Pl.'s Br. at 14-31.) Second, Plaintiff contends that the ALJ failed to properly account for Plaintiff's obesity in the RFC determination, as well as, throughout the sequential evaluation process. (*Id*. at 31-35.) Third, Plaintiff contends that ALJ West erred in failing to obtain vocational expert testimony before finding Plaintiff not disabled. (*Id*. at 23-30.) This Court considers each argument in turn.

As discussed above, ALJ West determined that Plaintiff has the RFC "to perform sedentary work as defined in 20 CFR 416.967(b) except that [Plaintiff] must avoid extreme cold and workplace hazards such as extreme heat, moving mechanical parts of equipment, tools, or machinery, electrical shock, working in high, exposed places, exposure to radiation, working with explosives, and exposure to toxic, caustic chemicals." (Tr. 16.) According to Plaintiff, ALJ West did not sufficiently consider the evidence in the record when formulating this RFC, and did not sufficiently incorporate limitations based on, *inter alia*, Plaintiff's ruptured right rotator cuff, obesity, neuropathy, and use of a cane. (Tr. 17-30.) However, in formulating the RFC, the Commissioner's decision explicitly considers the record evidence as it pertains to each of Plaintiff's ailments, including, but not limited to, Plaintiff's right shoulder injury, diabetes, asthma,

lower back pain, obesity, neuropathy, sleep apnea, osteoarthritis, and anxiety. (Tr. 16-18.) Moreover, consideration of Plaintiff's use of a cane in formulating the RFC was unnecessary because ALJs need only consider "medically required" devices. SSR 96-9p, 1996 WL 374185, at *7 (S.S.A.). The record does not indicate that Plaintiff was prescribed a cane or other assistive device by a treating source. Rather, Dr. Khaimchayev opined that Plaintiff did not need to use a cane, and Plaintiff did not appear with a cane at several appointments between February and July of 2014. (Tr. 496, 499-501, 504-06, 509-10, 513-15.) Moreover, Dr. Vekhnis indicated that Plaintiff's use of cane is only needed for long distances. (Tr. 554, 560.) In light of these considerations, the ALJ's findings regarding Plaintiff's RFC are supported by substantial credible evidence. Furthermore, ALJ West properly considered Plaintiff's obesity both in formulating the RFC and throughout the sequential evaluation process. (*See* Tr. 13-14, 16-19.)

Finally, ALJ West did not err in finding Plaintiff not disabled without the assistance of a vocational expert. Given the documented evidence and availability of the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, a vocational expert was not necessary. Having considered Plaintiff's RFC, including the applicable environmental restrictions on temperature extremes and workplace hazards; as well as Plaintiff's age, education, and work experience; ALJ West properly determined that Plaintiff was not disabled pursuant to Medical-Vocational Rule 201.28 and SSR 96-6p.

## IV.    CONCLUSION

Because this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and that ALJ West's legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:      Parties